IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

SONNY LARNEY, )
)
        Plaintiff, )
)
v. ) Case No. CIV-13-449-SPS
)
CAROLYN COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Sonny Larney requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 15, 1961, and was fifty years old at the time of the administrative hearing (Tr. 37). He completed high school and reported at the hearing that he had attended special education classes, and has worked as a stocker, fry cook, wet spray coater, brick slurry, and magnet inspector (Tr. 69, 199). The claimant alleges that he has been unable to work since December 15, 2010, due to a liver infection, urinary infection, and diabetes (Tr. 199).

## Procedural History

On December 20, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Douglas S. Stults conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 10, 2012 (Tr. 16-25). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c) (Tr. 21). The ALJ thus

concluded that the claimant was not disabled because he could return to his past relevant work as a cook or a wet spray coater (Tr. 24).

## Review

The claimant contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly assessed the opinion of the claimant's treating physician and treating nurse practitioner, and did not have the benefit of a statement by the claimant's former employer, that was submitted to the Appeals Council. The Court agrees with the claimant's contentions and finds that the ALJ failed to conduct a proper step four analysis.

The ALJ found that the claimant had the severe impairments of diabetes mellitus and status post amputation of the great right toe (Tr. 19). Medical evidence reveals that the claimant was treated at Carl Albert Indian Hospital for a scrotal abscess and cellulitis of the right shoulder (Tr. 276-462). On March 15, 2012, the claimant underwent an amputation of his great right toe, following the development of an ulcer which the claimant had treated from July 2011 through March 2012 at Wewoka Indian Wound Care Clinic (Tr. 515-571).

On September 5, 2011, Family Nurse Practitioner Joan Tapper, from Wewoka Indian Clinic, completed a medical statement indicating that the claimant's diagnoses were: diabetes type II, diabetes foot ulcer (healed), hypertension, diabetic neuropathy, and cataracts (Tr. 514). It was her opinion that the claimant could only work two hours per day, and that he could stand two hours at a time and sit four hours at a time, lift up to ten pounds frequently and occasionally, and occasionally bend and manipulate with his

hands. She further indicated that the claimant would frequently need to elevate his legs during an eight-hour workday (Tr. 514). On April 18, 2012, she completed a second statement with the same diagnoses, but noting the claimant's right great toe had been amputated on March 15, 2012, and that he was pending surgery for his cataracts (Tr. 616). She further adjusted her opinion to find that the claimant could work zero hours per day, stand 15 minutes at one time, sit two hours at one time, lift ten pounds occasionally and five pounds frequently, and that he would need to elevate his legs most of the time (Tr. 616). She rated his pain as severe (Tr. 616). That same day, Dr. Andrew Stevens completed a medical statement, indicating his status post amputation of right hallux (great right toe) (Tr. 617). He further stated that the claimant could work zero hours per day, not stand for any length of time, sit for four hours at a time, and only lift five pounds occasionally (Tr. 617). He indicated that the claimant could constantly bend and manipulate his hands, but would need to elevate his legs most of the time; he stated these restrictions would apply until the claimant's wound had completely healed (Tr. 617).

Two state reviewing physicians both found that the claimant could perform medium work, although Dr. Lisa Mungul also found the claimant had limited overhead reaching for the right arm and normal use of the left arm (Tr. 464-470, 506). The second physician noted that follow-up treatment of the claimant's right shoulder had revealed no abscess, and therefore found no related limitations (Tr. 506-507).

Evidence submitted to the Appeals Council included a "Work Activity Questionnaire" completed by the claimant's former employer, Mickey Shaw. Mr. Shaw

indicated that from January 1, 2011, the claimant was not able to complete the usual duties for his position without special assistance, that he did not regularly report for duty as scheduled, and that he did not complete his work in the same amount of time as other employees, as demonstrated by fewer hours and more breaks/rest periods (Tr. 719). He estimated that the claimant's productivity compared to other employees with similar positions and pay was 50% or less than other employees' productivity (Tr. 719).

The Court agrees with the claimant that the ALJ erred in formulating the claimant's RFC when he found the claimant could perform the full range of medium work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Nevertheless, the ALJ failed to cite to any evidence in the record to support a finding that the claimant could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, and he thus failed to point to medical evidence demonstrating the claimant can perform medium work. Both the claimant's

testimony and the examining and treating medical sources belie such a finding, and there is no evidence in the record other than assertions without support from non-examining, non-reviewing physicians. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7. As in *Jagodzinski*, "[t]he problem in this case is the absence of evidence regarding plaintiff's impairments and limitations[.]" 2013 WL 4849101, at *5. "When the medical evidence indicates . . . that the record is insufficient to make an RFC finding, it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform medium work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Id.* *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted].

Although, the ALJ's written decision notes the two assessments from Ms. Tapper and Dr. Stevens, he afforded them "minimal weight" (Tr. 23-24). As to Ms. Tapper's first opinion, he found that routine notes indicated the claimant had no complaints of pain and they did not specifically state that the claimant needed to elevate his legs. As to Ms. Tapper's second opinion and Dr. Stevens' opinion, he gave them "minimal weight" because those restrictions were related to the immediate period following the claimant's

toe amputation, a finding that the claimant could not work at all was reserved for the Commissioner, and Dr. Stevens specifically stated that those restrictions only applied until the claimant's wound healed (Tr. 24). The ALJ thus concluded that the claimant's wound would heal within twelve months (Tr. 24). The ALJ was clearly not required to give controlling weight to any opinion by Ms. Tapper or Dr. Stevens to the effect that the claimant was unable to work, *see* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."), but should nevertheless have determined the proper weight to give such opinions that the claimant could work zero hours (or fewer than eight hours total per day) rather than ignoring them outright. This is especially important where, as here, Dr. Stevens and Ms. Tapper were not simply saying that the claimant was disabled, but opining as to his specific limitations. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").

Notably, much of the ALJ's support for his findings relied in large part on the claimant's failure to follow treatment for his impairments, *e. g.*, self-care related to his diabetes. In considering the impact of such failure, the ALJ must follow a four-part test:

(i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). *See also Lee v. Barnhart*, 117 Fed. Appx. 674, 681 (10th Cir. 2004) ("This analysis applies to cases in which the claimant fails to pursue medical treatment because he cannot afford it.") [unpublished opinion], *citing Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay for recommended treatment may justify the failure to follow the treatment); *Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7; *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'") [unpublished opinion], *quoting Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987). In this case, however, the ALJ failed to discuss *any* of these factors in relation to his finding that claimant was noncompliant with medical treatment.

Finally, the claimant's contention that the ALJ failed to properly evaluate all the medical evidence is based, in part, upon the evidence submitted to the Appeals Council after the hearing. The Appeals Council must consider such additional evidence if it is: (i)

new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the administrative hearing qualifies as new, material and chronologically relevant, but the Appeals Council considered it, and the Court therefore has no difficulty concluding that it does qualify.

First, evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The evidence submitted by the claimant to the Appeals Council clearly was new evidence. The claimant's former employer corroborated the claimant's testimony that he had continued to work through December 2011, but had done so at a substantially reduced level (Tr. 719). Neither was the information duplicative or cumulative because it was not presented to the ALJ prior to his decision and the ALJ specifically questioned the claimant about this at the hearing. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). In other words, the evidence must "reasonably [call] into question the disposition of the case." *Id.*; *see also, Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) [unpublished table opinion]. In this regard, the information provided further insight into the claimant's limitations and accommodations as he attempted to work even prior to the amputation of his great right toe. Finally, the evidence is chronologically relevant when it pertains to the time "period

on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Although this information was submitted subsequent to the ALJ's decision, it is a clarification and explanation as to testimony the ALJ elicited at the hearing regarding work the claimant could (and could not) perform, and was based on evidence from the pertinent time frame (Tr. 815).

Since the evidence presented by the claimant after the administrative hearing *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b) and the Appeals Council considered it, such evidence "becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the aforementioned standards. In light of this new evidence as well as the additional errors indicated above, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC. On remand, the ALJ should consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not

appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. Although an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, it might be helpful where, as here, there was no evidence in the record to support the ALJ's prescribed RFC assessment. *Hawkins v. Chater*, 113 F.3d 1162, 1166, 1168 (10th Cir. 1997).

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**